WILLIAM BRADFORD, Trustee, *vs.* MARY U. BURGESS *et al.*

PROVIDENCE—DECEMBER 2, 1897.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

A., the owner of an estate subject to an existing mortgage, executed a second mortgage thereof containing a covenant that the estate was free from encumbrances, and a warranty against the lawful claims of all persons. The latter mortgage was assigned to H., the wife of the mortgagor, and by her and her husband assigned to B. as trustee for H. Subsequently B. brought an action of ejectment against A. for possession of the estate and obtained judgment by default; he was put in possession of the mortgaged premises by the sheriff, and retained possession thereof for more than twenty years, although A. and H. continued in actual occupation of the same until the death of H., when A. removed therefrom and lived away until his decease. Before her death H. purchased and had assigned to her the prior mortgage above mentioned, but did not have it discharged of record. Complainants claimed title to the estate for the heirs at law of H., and respondents claimed the title as heirs at law of A. :—

*Held,* that the second mortgage had been effectually foreclosed, and the mortgagor and those in privity of title with him were barred of all right of redemption thereunder.

*Held,* further, that the first mortgage was not an outstanding encumbrance at the decease of H., but had been extinguished by merger in her equitable title to the estate.

*Held,* further, that the respondents were precluded by the covenant and warranty in the second mortgage made by A.

In the above mentioned suit of ejectment the writ, dated April 16, 1872, was issued by the clerk of the Court of Common Pleas for Providence county, and made returnable to the Court of Common Pleas for Bristol county, and the declaration, after reciting other facts, alleged that the plaintiff held the title under the assignment of the second mortgage by deed " duly " executed :—

*Held,* that the writ had been properly issued and returned under the statutes then in force.

*Query,* if the declaration did not sufficiently set forth the title of the plaintiff in ejectment, since there could have been no *due* execution of the deed of assignment if the requirements of the statute had not been complied with by the parties to it.

When the owner of an estate pays off an encumbrance upon it the presumption is that he intends to extinguish the encumbrance and relieve the estate ; but such encumbrance may be kept alive if the intention to do so sufficiently appears.

If there be no evidence of intention, and it is for the interest of the owner to preserve the encumbrance, equity will so treat it on the presumption that his intention is in accord with his interest.

The judgment of a court having jurisdiction of the subject matter, and of the parties, can be set aside as erroneous only in some proceeding operating di-

rectly on the record; and until so set aside is conclusive on the parties to it and on those in privity of title with them.

The assignment from H. to B., as trustee for her, having been lost, and no other evidence being produced at the trial to determine the extent of the trust:—

*Held*, that it was to be presumed that the trust was to continue merely during her coverture, and that the subsequent management of the estate by B. was as agent for her heirs.

BILL IN EQUITY for partition. Heard on pleadings and proofs relative to the title of the respective parties.

MATTESON, C. J. The main issue in this suit is as to the title to the land described in the bill of which partition is sought.

The conveyances on which the title depends are as follows :
On October 30, 1848, Mary Reynolds, then seized in fee of the land, conveyed it in fee to Samuel J. Reynolds, who, by deed of that date, mortgaged it back to the grantor, to secure the payment of his note for five hundred dollars, payable in ten years with interest.

On March 17, 1851, Samuel J. Reynolds, by deed of that date, conveyed the land in fee to George H. Reynolds. This deed was the usual short form of warranty deed. The covenants contained in it excepted from their operation the mortgage for five hundred dollars given to Mary Reynolds by the grantor, and the deed itself stipulated that the mortgage, with the interest from the time the deed was given, should be paid by the grantee, the amount of the mortgage having been deducted from the consideration mentioned in the deed.

On September 30, 1851, George H. Reynolds, by deed of that date, mortgaged the estate to Mary P. Reynolds to secure the payment of his note for one thousand dollars, payable one year after date with interest. This mortgage contained a covenant against encumbrances, and also of general warranty against the lawful claims and demands of all persons. Neither covenant contained any exception of the prior mortgage, given by Samuel J. Reynolds to Mary Reynolds, for five hundred dollars and interest.

On October 23, 1851, Mary P. Reynolds, by deed of that date, assigned the last mentioned mortgage, and all her in-

terest in the mortgaged premises and mortgage debt, to Hannah B. Reynolds, wife of the mortgagor.

On April 13, 1852, Mary Reynolds, by her deed of that date, assigned the mortgage first above mentioned to Thomas Wilson, Jr., which mortgage will hereafter be referred to as the Wilson mortgage.

The bill avers that on the          day of          18  , George H. Reynolds and Hannah B. Reynolds, his wife, assigned the mortgage note of the former for one thousand dollars, given with the mortgage deed securing payment of it, to William Bradford as trustee for said Hannah.    The note bears on its back what purports to be an assignment of it, as set forth in the averment ; but no assignment of the mortgage has been produced, and it is stated by the complainants that neither the assignment nor any record of it can be found.

On April 16, 1872, William Bradford, assuming to be trustee for Hannah B. Reynolds, brought an action of trespass and ejectment in that capacity in the Court of Common Pleas for the county of Bristol, at its May term, 1872, and recited in his declaration the giving of the mortgage by the defendant George H. Reynolds to Mary P. Reynolds, as already stated, her assignment of it to Hannah B. Reynolds, and the assignment of it by Hannah to himself by deed dated April 17, 1872, duly executed and acknowledged, whereby he became seized in fee, by way of mortgage, of the mortgaged premises, and ought to be in possession thereof, but that the defendant had entered into and disseized him of the premises and had withheld the possession thereof from him. The defendant in this suit suffered a default, whereupon the court gave judgment in favor of the plaintiff.    Execution issued on this judgment on May 21, 1872, by virtue of which the plaintiff was put into possession of the mortgaged premises by the sheriff.

At the September term, 1876, of this court for the county of Bristol, Thomas Wilson, assignee of the mortgage first above mentioned, brought his action of ejectment against George H. Reynolds, Hannah B. Reynolds, and William Bradford in his capacity as trustee, to recover possession of the mortgaged

premises. The defendants in that action, by their plea, averred a right of redemption in themselves and prayed the entry of a conditional judgment, and thereupon such proceedings were had that the court rendered a conditional judgment that if the mortgagor, his heirs, executors, administrators or assigns, should pay the plaintiff, or deposit in the clerk's office for him, the sum of $1,107.55 with interests and costs of suit, within two months from the date of the judgment, the mortgage should be void and discharged ; otherwise the plaintiff should have his writ of possession. The defendants did not comply with this judgment, nor was any writ of possession issued upon it ; but subsequently, on August 9, 1877, Wilson, in consideration of the payment to him of $1,119.74 by Hannah B. Reynolds, assigned to her the mortgaged premises and all his right, title and interest therein, together with the note and deed secured by mortgage. No possession of the mortgaged premises was ever taken by Hannah B. Reynolds under this mortgage, which still stands on the record undischarged.

Though Bradford as trustee was put into possession of the mortaged premises by the sheriff, under the execution issued in his suit against George H. Reynolds, as already stated, George H. Reynolds and Hannah B. Reynolds, continued in actual occupation of them until the death of Hannah, on November 12, 1879. After her decease George H. Reynolds remained on the premises a few months and then went to Michigan, where he died on March 15, 1880. Subsequently to the death of George H. Reynolds the premises were let by Bradford, through his agent William R. Taylor, who collected the rents to the time of his death.

No part of either of the mortgage debts was paid by George H. Reynolds.

The complainants contend that the legal estate in the mortgaged premises was vested in William Bradford, as trustee for Hannah B. Reynolds, and that on her decease the trust became a mere naked trust and the legal and equitable estate vested in them as her heirs at law.

The respondent Walter H. Barney, who on the decease of

Bradford was appointed by a decree of this court a trustee in the place of Bradford, maintains that the trust, created by the transfer of the mortgage and note from Hannah B. Reynolds to Bradford as trustee, is still in force, and, therefore, that he has the legal estate in the premises as trustee for the heirs of Hannah B. Reynolds, but avers his willingness to dispose of the estate and distribute the proceeds among the heirs of Hannah B. Reynolds, or to convey the estate to them, as he shall be directed by the court.

The respondent Mary U. Burgess, on the other hand, contends that on the decease of George H. Reynolds the estate vested in his heirs at law, to wit, his grandchildren, who are herself and one William R. Reynolds, and that, he having quitclaimed his interest in the property to her, she is alone entitled to it. The basis of this contention is that the Reynolds mortgage was never effectually assigned by Hannah B. Reynolds to Bradford as trustee, and that the judgment in the ejectment suit, under which he was put into possession of the mortgaged premises, was not a valid judgment, and consequently that the possession under it did not bar the equity of redemption of the mortgagor ; that this mortgage, and also the Wilson mortgage, remaining as outstanding mortgages on the property, were personal estate of Hannah B. Reynolds, which on her decease intestate became the property of her husband George H. Reynolds, and merged in his title as the owner of the estate.

The first ground on which the validity of the judgment in the ejectment suit of *Bradford, trustee*, v. *Reynolds* is assailed is that the writ in the suit was issued by the clerk of the Court of Common Pleas for Providence county, and made returnable to the Court of Common Pleas in Bristol county. It is claimed in support of the point that authority for making writs returnable in any other county than that in which they were issued was not given until January 22, 1873, Pub. Laws R. I. cap 271. This, however, is a mistaken claim. Pub. Laws R. I. cap. 403, passed February 27, 1862, provided that all original writs in the Supreme Court or Court of Common Pleas might be issued by the clerks of said courts in any

county and made returnable in another county. This act remained in force until repealed by Gen. Stat. R. I. cap. 261, § 12, which went into effect December 7, 1872, and was reënacted by Pub. Laws R. I. cap. 271, passed January 22, 1873. The writ in question is dated April 16, 1872, during the period that Pub. Laws R. I. cap. 403, passed February 27, 1862, was in force, and, consequently, though issued by the clerk of the court in Providence county, was properly made returnable to the court in Bristol county.

The second ground on which the judgment in the ejectment suit of *Bradford, trustee,* v. *Reynolds* is attacked is that, as the judgment was by default, it is conclusive only as to facts well pleaded, and hence that it was not binding on the defendant, and is not binding on the respondent Burgess as his heir at law, because the declaration in the suit shows no title in the plaintiff to the mortaged premises.

The averments in the declaration, after setting forth the making of the mortgage by George H. Reynolds to Mary P. Reynolds, and her assignment of it and of the mortaged premises to Hannah B. Reynolds, continued : "By force whereof the said Hannah B. Reynolds then and there became seized of said premises in her demesne as of fee and in mortgage as aforesaid ; and being so seized thereof, on the fifteenth day of April, 1872, by her deed thereof duly executed and acknowledged, for a valuable consideration therein expressed, conveyed, assigned and transferred the said premises to the plaintiff, to hold," &c. Rev. Stat. R. I. cap. 316, §§ 4 and 5, in force at the date of the transfer of the mortgage set out in the declaration, taken together, authorized the sale and conveyance of debts secured by mortgage on property, which were the property of any woman before marriage or might become the property of any woman after marriage, by deed executed by both husband and wife, thus by implication excluding such sale and conveyance in any other manner. In view of this provision it is contended that, as the declaration alleges merely that Hannah B. Reynolds, *by her* deed duly executed and acknowledged, conveyed, assigned and transferred the mortgaged premises to the plaintiff, and

does not allege that her husband joined in the execution of the deed, it is insufficient to show that the plaintiff had any title to the mortgaged premises, and consequently that the judgment rendered on it by default was void.

We think it may well be doubted whether the allegation of the declaration does not sufficiently set forth title to the mortgaged premises in the plaintiff, since it states that the assignment of the mortgaged premises by Hannah B. Reynolds was by her deed *duly executed,* and there could have been no *due* execution of the deed by her unless her husband had joined with her in its execution. But whether this be so or not, the question of the plaintiff's title, and of the sufficiency of the averment of it in the declaration, and of his right to the possession of the mortgaged premises, were within the jurisdiction of the court to determine ; and, as there has been valid service of process on the defendant, it also had jurisdiction over the parties. Hence its judgment, even if it be assumed that the averment in the declaration was defective in not sufficiently setting forth the title of the plaintiff to the demanded premises, was not void but voidable merely. It may have been liable to be set aside as erroneous, in some proceeding operating directly on the record, but until so set aside it was conclusive on the defendant, and is conclusive on those in privity of title with him.

The case shows that Bradford, as trustee, was put into possession of the mortgaged premises by the sheriff, under the execution issued on the judgment, on May 25, 1872. The statutory period of three years within which the mortgagor, his heirs or assigns, were entitled to redeem, began to run from that date. No steps having been taken by him to vacate the judgment, assuming it to have been erroneous, and the three years limited by statute as the period of redemption having expired while the judgment remained in force, and Bradford, trustee, having been in possession of the mortgaged premises for twenty years under that claim of right, we think the mortgage must be regarded as effectually foreclosed, and the mortgagor and those in privity with him barred of all right of redemption.

We do not think that the respondent Mrs. Burgess is entitled to enforce the Wilson mortgage on the ground that it was an outstanding encumbrance at the decease of Hannah B. Reynolds, which became a part of the personal estate of her grandfather, George H. Reynolds, as the husband of Hannah. When the owner of an estate pays off an encumbrance, the presumption is that he intends to extinguish it and relieve the estate. The encumbrance may be kept alive if an intention to do so sufficiently appears. If there is no evidence of intention, and it is for the interest of the owner that the encumbrance should be preserved, equity will so treat it, his intention being presumed to be in accordance with his interest. *Dodge* v. *Hogan*, 19 R. I. 4. In the present instance, the only circumstance from which an intention to keep the Wilson mortgage alive can be inferred is the fact that Mrs. Reynolds took a transfer of it to herself instead of having it discharged on the record. By what advice or from what motive she did so does not appear. Nor does it appear that it was for her interest that the mortgage should be kept alive. In *Hood* v. *Phillips*, 3 Beav. 513, the owner of an estate purchased an outstanding mortgage upon it and took a transfer of it, not to herself, but to a trustee who covenanted with her, her executors, administrators and assigns, that he would at her request convey the estate to her, her heirs and assigns, or to such other person as she, her heirs, executors, administrators and assigns should direct. The taking of a transfer to a trustee would certainly afford as strong evidence of an intention to keep an encumbrance alive as the taking of a transfer of it directly to the owner of the encumbered estate ; but it was nevertheless held in *Hood* v. *Phillips* that it was not decisive, and was not sufficient of itself to overcome the presumption of an intent by the payment to extinguish the encumbrance and relieve the estate.

But, even if this were not so, Mrs. Burgess would be precluded by the covenant of warranty in her grandfather's mortgage, under which the complainants derive their title, as has been shown, from setting up any claim to the mortgaged estate under the Wilson mortgage. That covenant war-

ranted the mortgaged premises to the mortgagee, her heirs and assigns, against the lawful claims and demands of all persons, making no exception of the prior 'Wilson mortgage, payment of which by the deed of Samuel J. Reynolds to him had been assumed by George H. Reynolds as a part of the consideration for the purchase of the property. *Urquhart* v. *Brayton*, 12 R. I. 169. If George H. Reynolds had attempted to foreclose the Wilson mortgage, after the decease of his wife, this covenant of warranty would have been an insurmountable barrier to such attempt, and it would be none the less so to any attempt of Mrs. Burgess, who is a privy in title with him as his heir at law.

As the assignment of the mortgage by Mrs. Reynolds to Bradford as trustee cannot be produced, it is impossible to determine the extent of the trust created by it. In its absence, and the absence of other evidence concerning the trust, we think it is to be presumed that it was a trust to continue merely during the coverture of Mrs. Reynolds. If so, it terminated on her decease, and the subsequent management of the estate by Bradford is to be deemed to have been as the agent of her heirs, rather that by virtue of the trust. If this be so, the subsequent appointment of the respondent Barney as trustee in place of Bradford, on his decease, was without due consideration.

We are of the opinion that the title to the land is in the complainants, and that they are entitled to partition.

*Samuel Norris and Francis Colwell*, for complainants.

*John M. Brennan and Dennis J. Holland*, for respondents.

