**RHODE ISLAND STUDENT LOAN AUTHORITY**

v.

**NELS, INC.**

**90–319–APPEAL.**

Supreme Court of Rhode Island.

Dec. 10, 1991.

Joseph R. Palumbo, Jr., Middletown, for plaintiff.

William S. Eggeling, Ropes & Gray, Providence, for defendant.

## OPINION

MURRAY, Justice.

This case is an appeal from a Superior Court judgment. The plaintiff, the Rhode Island Student Loan Authority, appeals from the denial of its motion for summary judgment on its complaint and dismissal of its complaint. The defendant, NELS, Inc., cross-appeals from the granting of the plaintiff's motion for summary judgment on the defendant's counterclaim. We affirm.

The facts in this case are not in dispute, but the procedural history and relationship between the parties is lengthy and complex. The Rhode Island Student Loan Authority (RISLA) is a governmental entity created for the purpose of purchasing federal and state-guaranteed student loans from Rhode Island banks.[1] These acquisitions provide the banks with funds to make additional student loans. The initial purchase of student loans by RISLA was funded by its issuance of revenue bonds in the amount of $107,970,000. The bonds were issued on December 1, 1981, and were due and payable on January 1, 1985. In conjunction with the issuance of these bonds, RISLA entered into contracts with the United States Secretary of Education that

---

1. The Rhode Island Student Loan Authority was created by the General Assembly under P.L.1981, ch. 44, § 1. This legislation is since codified as G.L.1956 (1988 Reenactment) chapter 62 of title 16.

guaranteed the entitlement to federal payments for those student loans that met eligibility requirements.

NELS, Inc. (NELS), is a Rhode Island corporation whose principal office is in Providence. In December 1981 RISLA hired NELS to service its student loans, and among NELS's primary duties was the monitoring of student progress in repaying loans. The term of the initial agreement between RISLA and NELS was thirty-seven months or as long as any portion of the loans required servicing. The thirty-seven-month period coincided with the term of the 1981 revenue bonds.

In May 1984 RISLA entered into a "financing agreement" with a federally chartered corporation, Student Loan Marketing Association (SLMA). Under the financing agreement SLMA agreed to advance to RISLA $200 million for the purposes of retiring the 1981 revenue bonds and purchasing additional student loans from Rhode Island lenders. In conjunction with the 1984 financing agreement between RISLA and SLMA, RISLA entered into a new "servicing agreement" with NELS. Under this servicing agreement NELS agreed to service student loans acquired by RISLA from various Rhode Island lenders during the fifteen-year term of RISLA's 1984 financing agreement with SLMA.

Concurrent with the servicing agreement, NELS, SLMA, and RISLA entered into a custodial agreement. Under the custodial agreement NELS was designated to serve as custodian for certain documents relating to student loans. The agreement specifically provides for termination of NELS services by SLMA in the event that NELS failed to perform its obligations as custodian, but the agreement contained no provision providing for RISLA to terminate NELS's position as custodian.

In February 1986 RISLA filed a declaratory-judgment action in the Superior Court, seeking a declaration that the May 1984 servicing agreement was invalid and void because its fifteen-year term extended beyond the terms of the directors who authorized its execution. On January 15, 1988, the Superior Court entered a judgment that the servicing agreement was valid and that the agreement applied "only to student loans acquired with funds received by plaintiff Rhode Island Student Loan Authority from the Student Loan Marketing Association under the financing agreement dated May 8, 1984." RISLA appealed the judgment to this court, and in December 1988, by a three-to-one opinion, we affirmed the decision of the trial court. *Rhode Island Student Loan Authority v. NELS, Inc.*, 550 A.2d 624 (R.I.1988) (*RISLA I*).

In May 1988, while its appeal in *RISLA I* was pending, RISLA entered into an interim financing agreement with Rhode Island Hospital Trust National Bank (Hospital Trust) to finance additional purchases of loans from banks until it could structure a tax-exempt bond issue. Thereafter, RISLA ceased requesting further advances from SLMA under the May 1984 financing agreement.

In December 1988 RISLA issued tax-exempt revenue bonds in the sum of $224,600,000 to refinance its outstanding indebtedness to SLMA, to refinance its indebtedness to Hospital Trust, and to make additional purchases of student loans. On February 1, 1989, RISLA repaid its outstanding indebtedness to SLMA under the May 1984 financing agreement.

In April 1989 RISLA filed a complaint in Superior Court against NELS, seeking a declaration that upon satisfaction of RISLA's indebtedness to SLMA, NELS was no longer entitled to service loans financed by SLMA, and that as a result, NELS was required to deliver the outstanding loans and loan documentation to RISLA. NELS subsequently filed a counterclaim for breach of contract and intentional interference with contractual relationships.

On October 18, 1989, RISLA filed a motion for summary judgment on its complaint and a motion for summary judgment on NELS's counterclaim. The Superior Court entered a judgment granting RISLA's motion for summary judgment on NELS's counterclaim and denying RILSA's motion for summary judgment on its complaint. The judgment further ordered RIS-

LA's complaint dismissed. Both RISLA and NELS filed notices of appeal.

On appeal RISLA claims that the trial justice erred in denying its motion for summary judgment on its complaint and for dismissing its complaint as barred by the doctrine of res judicata. On cross appeal NELS also claims that the trial justice erred in granting RISLA's motion for summary judgment on the basis that NELS's counterclaim is barred as res judicata. We affirm.

I

In its appeal RISLA asserts that the trial-court order in *RISLA I* decided only the validity of the 1984 contract and NELS's right under the servicing agreement to service loans purchased by RISLA with financing obtained from SLMA. RISLA claims that the issue of NELS's rights to continue servicing SLMA financed loans once the SLMA financing was fully satisfied was never addressed.

Consequently, RISLA asserts that: (1) its instant claim was never before the court; (2) its complaint is not barred as res judicata; and (3) this court should construe the 1984 agreements as terminating NELS's right to service loans purchased from SLMA under the bond issue. Because we find that RISLA's instant claim was considered by the trial justice in *RISLA I* and is therefore barred as res judicata, we do not reach RISLA's assertion that the documents be construed in its favor.

■ "The doctrine of res judicata operates as an absolute bar to a cause of action where there exists '(1) identity of parties, (2) identity of issues and (3) finality of judgment.'" *Hebert v. Ventetuolo,* 480 A.2d 403, 405 (R.I.1984) (quoting *Air–Lite Products, Inc. v. Gilbane Building Co.,* 115 R.I. 410, 422, 347 A.2d 623, 630 (1975)); *see also DiSaia v. Capital Industries,*

*Inc.,* 113 R.I. 292, 298, 320 A.2d 604, 607 (1974). When invoked, it makes the prior judgment conclusive as to any issues that were raised or that could have been raised. *Hebert,* 480 A.2d at 405–06; *Zalobowski v. New England Teamsters and Trucking Industry Pension Fund,* 122 R.I. 609, 612, 410 A.2d 436, 437 (1980); *Armstrong v. Armstrong,* 117 R.I. 83, 86, 362 A.2d 147, 149 (1976).[2]

■ In applying the requirements of res judicata to the pending claim, we find that there is an identity of parties and that there was a final judgment reached on the merits in *RISLA I.* In dispute is whether the issues raised in the pending action could have been raised in *RISLA I.* To resolve this dispute, we examine RISLA's amended complaint and the trial justice's amended order affirmed by this court in *RISLA I.*

In 1986 RISLA brought an action in Superior Court seeking declaratory judgment to invalidate its 1984 servicing agreement with NELS because the fifteen-year term exceeded the terms of office of RISLA's board members. RISLA's amended complaint further sought a declaration that NELS was entitled to service only those loans acquired with advances from SLMA under the May 1984 financing agreement with SLMA. Paragraphs 15 and 16 of RISLA's 1986 amended complaint aver:

"15. Plaintiff [RISLA] intends to make future purchases of student loans with the proceeds of said bond issue, and does not desire to make additional purchases of student loans with moneys available to plaintiff under [the 1984] financing agreement with SLMA.

"16. On information and belief, Plaintiff [RISLA] avers that the Servicing Agreement does not require it to deliver to the defendant, for servicing, any student

**2.** NELS argues in its brief that RISLA's claims are barred under the doctrine of collateral estoppel instead of under the doctrine of res judicata. In *Providence Teachers Union v. McGovern,* 113 R.I. 169, 172, 319 A.2d 358, 361 (1974), we established the prerequisites for collateral estoppel as: (1) identity of issues; (2) a final judgment on the merits; and (3) proof that the party against whom collateral estoppel is asserted was a party in the prior action. Although we find merit in NELS's argument, we believe that there is not an exact identity of issues actually raised and that plaintiff's claim is barred as a claim that could have been raised in the 1986 litigation.

loans purchased with the proceeds of its contemplated bond issue, but is only required to deliver to defendant, for servicing, student loans purchased with moneys advanced pursuant to said Financing Agreement with SLMA, dated May 8, 1984."

In reaching a decision in the 1986 litigation, the trial justice declared that the servicing agreement was valid, and he ruled that the servicing agreement applied "only to student loans acquired with funds received by plaintiff [RISLA] from [SLMA] under the financing agreement dated May 8, 1984." RISLA then appealed the decision concerning the servicing agreement's validity, and we affirmed.

In filing its present claim, RISLA asserts that satisfaction of its indebtedness to SLMA with proceeds from subsequent alternate financing (Hospital Trust and bond-issue financing) transforms loans initially purchased with funds received by RISLA from SLMA into loans purchased pursuant to alternate financing. Because these loans are now characterized as purchased with alternate financing, RISLA claims that NELS loses its contractual right to service these loans, and that NELS must surrender all rights and documentation to these loans to RISLA.

This interpretation deprives NELS of its right to service student loans that were purchased with advances pursuant to the 1984 servicing agreement as interpreted by the trial justice in *RISLA I*. In rejecting RISLA's argument, we adopt the trial justice's reasoning in the instant action:

"As stated previously, the issue of whether RISLA was obligated to deliver to NELS a minimum of $200 million worth of student loans for servicing was necessarily raised in the Amended Complaint and is *res judicata*. Likewise, the issue of transforming RISLA's initially purchased loans into loans purchased with alternate financing was necessarily raised and is also *res judicata*. [The 1986 trial justice] determined that NELS has the right to service student loans purchased with advances under the 1984 financing agreement. [The 1986 trial justice's] use of the word *advances* must be given its plain and ordinary meaning."

We agree that the *RISLA I* ruling determined that NELS was entitled to service loans that were initially acquired with SLMA advances, regardless of RISLA's subsequent financial maneuvers to reclassify the loans. This ruling must be given res judicata effect and cannot be distorted with misinterpretation or misapplication of what was actually decided. Accordingly RISLA's appeal on the denial of its motion for summary judgment on its complaint and dismissal of its complaint is denied.

II

█ NELS appeals from the trial justice's granting of RISLA's motion for summary judgment on NELS's counterclaim. In support of its appeal NELS asserts that: (1) summary judgment could not be properly granted because the record demonstrates unchallenged existence of disputed material fact, and (2) that NELS's counterclaim was not and could not be decided in the first litigation and is therefore not barred as res judicata. Because we find that NELS's counterclaim is barred as res judicata we do not address the issue of existence of disputed material fact.

In finding that NELS is barred from raising its counterclaim, we again look to the claims raised and decided in *RISLA I*. Paragraphs 15 and 16 of RISLA's amended complaint, *infra*, essentially sought a declaration of RISLA's obligations under the following recital in the financing agreement:

"Whereas, the Borrower [RISLA] has requested advances from the Lender [SLMA] in an aggregate amount of up to $200 million which amount will be used by the Borrower in acquiring and refinancing loans made under the Guaranteed Student Loan Program established by the Higher Education Act of 1965."

In fashioning his order, the trial justice in *RISLA I* ruled that the servicing agreement applies "only to student loans acquired with funds received by plaintiff Rhode Island Student Loan Authority from

the Student Loan Marketing Association under the financing agreement dated May 8, 1984." NELS initially filed an appeal to this ruling but subsequently withdrew its appeal. In withdrawing its appeal, NELS necessarily assented to the trial justice's interpretation of its rights under the servicing agreement. Accordingly NELS is barred from relitigating the issue.

In reviewing NELS's instant counterclaim in light of the *RISLA I* litigation, the trial justice interpreted the 1986 order to have fully considered and rejected NELS's claim that RISLA was not free to secure other financing until it had fully utilized the $200 million under the SLMA financing agreement. Consequently the 1986 judgment is res judicata and bars NELS's right to claim that RISLA is obligated to deliver $200 million worth of loans for servicing to NELS.

In 1988 RISLA secured financing from Hospital Trust to acquire loans and in 1989 issued bonds giving it independent funding to acquire new loans. By the decision affirmed in *RISLA I*, NELS has no contractual claim to service the new loans acquired from those funds. Therefore, RISLA is not in material breach of its servicing contract by not allowing NELS to service new loans acquired with funds from a source other than SLMA. Accordingly we affirm the trial justice's ruling that NELS's claim of material breach of contract is without merit, and that the related claim of intentional interference with prospective contractual relations is likewise without merit.

For the reasons stated, the plaintiff's and the defendant's appeals are denied and dismissed and the judgment of the Superior Court is affirmed. The case is remanded to the Superior Court.